IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARCIA BERTRAND, on behalf of herself and all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) BMO BANKCORP, INC. f/k/a ) HARRIS BANKCORP, INC. ) ) Defendant. ) | Case No: 1:11-cv-05496<br><br>Hon. James B. Zagel |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND ALLOWANCE OF TWO LATE-FILED CLAIMS**

Plaintiff Marcia Bertrand ("Plaintiff"), individually and behalf of all others similarly situated, respectfully moves this Court to enter an order (1) granting final approval of the settlement of this combined Rule 23 class action and FLSA collective action and (2) allowing two late-filed claims.

**I. INTRODUCTION**

This class settlement, which was preliminarily approved by the Court on December 19, 2012, resolves allegations that Defendant BMO Bankcorp, Inc. ("Defendant") violated federal and state law by failing to pay time-and-a-half overtime wages to a Class of 74 employees. Under the settlement, Defendant has agreed to pay 140 percent of the wages due the Class members. Notice has been mailed to Class members and claims have been filed. There have been no objections; only two members have opted out of the settlement. In addition to granting preliminary approval to the settlement, the Court previously certified for settlement purposes a Rule 23 class and a

FLSA collective-action class. As such, the Court need only grant final approval of the settlement to conclude this litigation. Because the settlement is fair, reasonable and adequate, final approval is warranted.

## II. PROCEDURAL BACKGROUND

### A. The Complaint

Plaintiff filed her complaint in this case Aug. 12, 2011 for herself and for similarly situated individuals, alleging that Defendant BMO Bankcorp, Inc. ("Defendant") failed to pay overtime wages to certain employees who worked more than 40 hours in a single week. Those employees, including Plaintiff, worked at a call center operated by Defendant in Buffalo Grove, Illinois. Plaintiff's complaint alleged violations of the federal Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA").

### B. The Settlement Agreement

In December 2012, counsel for Plaintiff and Defendant reached a settlement of this litigation. *See* Class Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A. Defendant's records establish that there were 74 Class members who were owed overtime wages. Defendant agreed to pay the full amount owed each Class member as well as a 40 percent premium. Defendant agreed to pay Plaintiff and Class members a total of $18,175.02 Additionally, Defendant agreed to pay Plaintiff an incentive award of $1,000 for her contribution in initiating and prosecuting this action. This amount is included in the $18,175.02 Defendant agreed to pay Plaintiff and the Class. Finally, Defendant agreed to pay Plaintiff's attorneys' fees of $41,014 and costs of $553.55.

### C. PRELIMINARY APPROVAL

On December 13, 2012, Plaintiff moved for preliminary approval of the proposed class settlement, certification of a Rule 23 settlement class, certification of an FLSA collective action settlement class and notice of proposed settlement and fairness hearing. A hearing was held on Plaintiff's motion on December 19, 2012. The Court granted Plaintiff's motion in its entirety and scheduled the fairness hearing for April 3, 2013.

## III. ADMINISTRATION OF THE SETTLEMENT

Because the Settlement Agreement encompassed both an FLSA collective action and a Rule 23 class, Class members were provided with a combined opt-in/opt-out Notice.[1] The Notice informed individual Class members of the amount they will receive under the terms of the settlement. Class members also received a Claim Form. In order to participate in the settlement and receive the settlement payment, Class members were required to complete the Claim Form by (i) opting *in* to the FLSA collective action; (ii) not opting *out* of the Rule 23 class action; and (iii) releasing and waiving all claims covered by the Settlement Agreement. Under the terms of the Settlement Agreement, the Claim Forms were to be returned within 45 days after issuance of the Notice.

The Notices and Claim Forms were mailed to Class members on January 23, 2013. Claim forms were to be returned postmarked by March 9, 2013 to be considered timely under the Settlement Agreement. A total of 26 completed Claim Forms have been returned. Two of these completed Claim Forms were completed or postmarked after March 9, 2013. Additionally, two incomplete Claim Forms were returned; the claims

---

[1] This combined Rule 23/FLSA opt-in/opt-out class notice procedure has been expressly approved by the Seventh Circuit. *See Ervin v. OS Rest. Services, Inc.*, 632 F.3d 971, 978 (7th Cir. 2011).

3

administrator has followed up with these individuals in an effort to obtain completed Claim Forms. Two Class members opted out of the litigation. There were no objections.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). As such, the Seventh Circuit has limited a district court's settlement-approval inquiry to whether a proposed settlement is lawful, fair, reasonable and adequate. *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (citing *Isby*, 75 F.3d at 1198-99). In evaluating the fairness of a settlement, courts consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby,* 75 F.3d at 1199).[2] In the instant case, each of these factors weighs in favor of final approval.

### A. Strength of Plaintiff's Case Compared to Settlement Offer

When evaluating a proposed settlement, courts should attempt to quantify the expected value of continued litigation to the class. *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 284-85 (7th Cir. 2002). Because the essence of settlement is compromise,

---

[2] A court's review of a proposed FLSA settlement considers similar factors. *See Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) ("When reviewing a FLSA class action settlement, a court normally considers the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation").

4

courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Often, "a future victory is not as valuable as a present victory." *In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

On the other hand, this settlement is a full recovery, plus premium for delayed payment. Thus, the value of the settlement here is not discounted for any litigation risk. While we believe this is a strong and well documented case, a settlement presenting a full recovery, and undiminished by attorneys' fees and costs, is a rare accomplishment. Defendant has agreed to pay the applicable overtime wages plus a premium of 40 percent; this is a 140 percent recovery. Class members will receive the full amount of their actual damages plus 40 percent in additional liquidated damages. This settlement represents an excellent result for the Class members by any standard.

### B. Likely Complexity, Length and Expense of Litigation

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). While the legal issues here are not overly complex, resolution of the wage claims of the several dozen Class members in this case would require extensive and detailed litigation in the absence of a settlement; and, considering the relatively small class size might diminish the incentive to pursue a full recovery, for fear that it would require expenditure of time that might not be fully compensated. Continued litigation would also require considerable judicial resources, in considering class certification and collective-action treatment, dispositive motions, pre-trial motions, trial, and possible

post-trial motions. When viewed in light of the modest amount of damages at stake here – and the fact Defendant has agreed to pay 140 percent of damages, plus an agreed attorneys fee that does not reduce the recovery—all weigh in favor of approval.

### C. Opposition to Settlement

There were no objections to the Settlement Agreement. The lack of objectors challenging a settlement favors a finding that the settlement is "fair and reasonable." *Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). *See also Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 326 (7th Cir. 1996) (finding that where "silence is coupled with other indicia of fairness, it provides further support for approval"). Because there has been no opposition to the settlement, this factor weighs in favor of approval.

### D. Counsel's Opinion

Courts are entitled to "rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. Here, the attorneys for the parties are competent, experienced litigators. As evidenced by the Settlement Agreement reached by the attorneys for the parties, their opinion is that this matter should be settled. *See Hispanics United of DuPage County*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (noting that "strong initial presumption of fairness attaches" where a settlement is "the result of arm's length negotiations"). Accordingly, this factor weighs in favor of approval.

### E. Stage of Proceedings and Amount of Discovery Completed

The fact that formal discovery was not conducted before a proposed class settlement was reached does not preclude approval. In a wage-and-hour case where discovery is "somewhat informal and far from contentious," approval will nevertheless be

post-trial motions. When viewed in light of the modest amount of damages at stake here – and the fact Defendant has agreed to pay 140 percent of damages, plus an agreed attorneys fee that does not reduce the recovery—all weigh in favor of approval.

### C. Opposition to Settlement

There were no objections to the Settlement Agreement. The lack of objectors challenging a settlement favors a finding that the settlement is "fair and reasonable." *Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). *See also Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 326 (7th Cir. 1996) (finding that where "silence is coupled with other indicia of fairness, it provides further support for approval"). Because there has been no opposition to the settlement, this factor weighs in favor of approval.

### D. Counsel's Opinion

Courts are entitled to "rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. Here, the attorneys for the parties are competent, experienced litigators. As evidenced by the Settlement Agreement reached by the attorneys for the parties, their opinion is that this matter should be settled. *See Hispanics United of DuPage County*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (noting that "strong initial presumption of fairness attaches" where a settlement is "the result of arm's length negotiations"). Accordingly, this factor weighs in favor of approval.

### E. Stage of Proceedings and Amount of Discovery Completed

The fact that formal discovery was not conducted before a proposed class settlement was reached does not preclude approval. In a wage-and-hour case where discovery is "somewhat informal and far from contentious," approval will nevertheless be

appropriate where there is no question about the reliability of the data exchanged and the court is "confident that the Court and counsel are able to evaluate the merits if Plaintiff's claims." *Butler v. Am. Cable & Tel., LLC*, No. 09-5336, 2011 WL 4729789 at *12 (N.D. Ill. Sept. 12, 2011). Here, the case and the compensation for all class members comes straight from defendant's own employment records; which the defendant, a significant large banking institution of long standing, keeps in the ordinary course, and has certified as to their accuracy. Accordingly, the reliability of the computation is very high, no less than if it were the result instead of a lengthy formal discovery. Settlement without resort to formal discovery may be particularly appropriate where the issues in contention are legal, not factual, "and there is no indication that formal discovery would have assisted the parties in devising the Proposed Settlement Agreement." *In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. at 350.

In the instant case, extensive informal discovery established that 74 class members were paid straight-time rates for hours worked in excess of 40 hours a week. Additional, formal discovery would shed no new light on this matter. There is no dispute that the payroll records produced by Defendant are reliable; Defendant's counsel has previously submitted a declaration to the Court attesting to the accuracy of Defendant's records. Therefore, this factor does not weigh against approval.

### V. THE COURT SHOULD ALLOW THE LATE-FILED CLAIMS

Two Class members returned Claim Forms after the March 9, 2013 deadline. The first was the named Plaintiff; who contacted undersigned counsel to raise the issue of not having actually received an original Claim Form directly from the Claims Administrator. After alerting counsel that she had not yet received the claims package in the mail,

undersigned Counsel obtained a replacement from the Claims Administrator, which Ms. Bertrand promptly completed, and emailed it to counsel, who forwarded it to the claims administrator, all within no more than 48 hours.

The second untimely Claim Form was received by the claims administrator postmarked shortly after the deadline.

These late claims should be allowed, certainly under the facts of this settlment. Under the Settlement Agreement, Defendant agreed to pay a total of $18,175.02 regardless of how many claims are filed. Money not claimed by Class members will not revert to Defendant or to Plaintiff's counsel; rather, leftover money will be split equally among two *cy pres* designees. Moreover, in context, the amount of each class member's recovery represents wages actually earned by that individual, who certainly should receive it, even on a late claim. Defendant does not object to allowing these late claims.

Accordingly, Plaintiff requests that the Court allow the two late-filed claims.

## VI. THE INCENTIVE PAYMENT SHOULD BE AWARDED

Under the terms of the Settlement Agreement, Defendant has agreed to pay Plaintiff a $1,000 incentive award. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Here, the agreed-upon incentive award is appropriate because Plaintiff Marcia Bertrand actually initiated contact with undersigned counsel, and the litigation that has resulted in a 140 percent recovery of unpaid overtime wages owed to her co-workers. The $1,000 award is modest; the median incentive award in class actions is $4,000.

8

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.REV. 1303, 1308 (2006)). *See also* Clinton A. Krislov, *Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation*, 78 Ill. B.J. 286, 290 (1990) (describing incentive payments as "legitimate bounties for producing certain benefits for a class and for society"). We strongly believe that persons like Ms. Bertrand, are the foundations on which justice is accomplished in class actions. The person who "sticks their neck out", accepts the likelihood of being deposed, and challenged, -- not just for themselves, but willing to assume as well the role as champion for others, who quite predictably choose to simply receive their proceeds—the class representative justly earned the modest reward sought here.

## VII. THE AGREED ATTORNEYS' FEES ARE REASONABLE

Defendant has agreed to pay Plaintiff's attorneys' fees of $41,014 and costs of $553.55. These fees and costs will be paid separately by Defendant and will not reduce the Class recovery of 140 percent of actual damages. This fee amount, set forth in the Settlement Agreement preliminarily approved by the Court December, 19, 2013, is reasonable and represents a significant reduction in the lodestar figure incurred by counsel in this litigation. For example, during settlement negotiations in August 2012, Plaintiff's counsel presented Defendant with documentation establishing that Plaintiff's counsel at that point had incurred fees of $54,827.12. In the interests of settling the case, the parties in September 2012 agreed to Plaintiff's fees in the amount of $38,014. Defendant subsequently agreed to pay an additional $3,000 to compensate Plaintiff's counsel for additional time spent revising and finalizing the settlement documents.

Plaintiff's counsel has invested extensive time in the case since the initial $54,827.12 lodestar amount was calculated in July 2012. Thus, the agreed-upon amount represents a significant reduction in the lodestar incurred by Plaintiff's counsel – let alone a lodestar with no multiplier. As such, the amount of agreed attorneys' fees is inherently reasonable.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff, individually and as representative of the Class of similarly situated persons, requests that this Court grant final approval of the Settlement Agreement, with requested attorneys fees and costs, allow the two late-filed claims and enter the proposed final approval order attached hereto as Ex. B.

Dated: April 1, 2013                               Respectfully submitted,

                                                   /s/ Clinton A. Krislov

Clinton A. Krislov
Christopher M. Hack
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1350
Chicago, Illinois 60606
Tel.: (312) 606-0500
Firm ID No.: 91198